USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/1/2021

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA,

                                        Plaintiff,

            —*against*—

NAUGHTON ENERGY CORPORATION,        21 Civ. ___04782___ (___)
MARIETTE NAUGHTON, and JOSEPH
NAUGHTON,

                                        Defendants.

---

**STIPULATION AND ORDER OF SETTLEMENT AND DISMISSAL**

WHEREAS, this Stipulation and Order of Settlement and Dismissal ("Stipulation") is entered into by and among plaintiff the United States of America (the "United States" or "Government"), by its attorney, Audrey Strauss, United States Attorney for the Southern District of New York, and defendants Naughton Energy Corporation ("Naughton Energy"), Mariette Naughton, President and majority shareholder of Naughton Energy, and Joseph Naughton, Marketing Manager of Naughton Energy and husband of Mariette Naughton (collectively "Defendants," and together with the Government, the "Parties"), by its authorized representatives;

WHEREAS, Naughton Energy is a Pennsylvania-based Disadvantaged Business Enterprise ("DBE") that has performed services as a subcontractor on a federally-funded public construction project;

WHEREAS, the United States Department of Transportation ("DOT") promulgated regulations entitled "Participation by Disadvantaged Business Enterprises in Department of Transportation Financial Assistance Programs" to provide opportunities for businesses owned by

Case 1:21-cv-04782-VEC    Document 5    Filed 06/01/21    Page 2 of 23

socially and economically disadvantaged individuals to work on federally-funded public construction projects. *See* 49 C.F.R. Part 26 (the "DBE Regulations");

WHEREAS, the DBE Regulations require that certain federally-funded projects have specific goals for DBE participation and that contractors make good faith efforts to meet or exceed those DBE goals, *see* 49 C.F.R. §§ 26.37, 26.45, 26.53;

WHEREAS, under the DBE Regulations, payments made to a DBE contractor count toward the DBE goal only if the DBE is performing a "commercially useful function" on the project, meaning that the DBE is "responsible for execution of the work on the contract and is carrying out its responsibilities by actually performing, managing, and supervising the work involved," 49 C.F.R. § 26.55;

WHEREAS, DOT provided federal funds to the New York State Thruway Authority ("NYSTA") for the Tappan Zee Hudson River Crossing Project, also referred to as the New New York Bridge Project (the "NNYB Project") and NYSTA set forth a DBE participation goal of 10% of the value of the work on the project;

WHEREAS, Tappan Zee Constructors, LLC ("TZC") was hired as the prime contractor on the NNYB, and agreed to make good faith efforts to meet or exceed the DBE participation goal of 10% of the value of the contract;

WHEREAS, in August 2013, Naughton Energy began providing fuel delivery services to TZC on the NNYB Project;

WHEREAS, as a condition of award for the NNYB Project, TZC certified to the NYSTA that its subcontractors, including Naughton Energy, would comply with the DBE Regulations.

WHEREAS, in order to satisfy the DBE utilization requirements for the NNYB project, TZC claimed that 60% of the expenditures it paid to Naughton Energy were eligible for DBE credit.

WHEREAS, TZC based this claim on the grounds that Naughton Energy was itself providing the fuel supply services.

WHEREAS, on or about May 14, 2021, the Government filed a complaint (the "Complaint") asserting claims pursuant to the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, and the common law, arising in connection with: (1) services provided by Naughton Energy on construction projects funded by the US-DOT; and (2) representations as to whether these services could be claimed towards DBE contract participation;

WHEREAS, the Government alleges that from August 1, 2013, through January 16, 2020, (the "Covered Period"), Defendants caused the submission by TZC of false claims for payment to DOT. Specifically, Defendants represented to TZC that Naughton Energy, a certified DBE, provided fuel, trucking, and manpower services to TZC without assistance from a subcontractor. However, a non-DBE subcontractor did provide manpower and equipment used to perform the services that Naughton Energy provided to TZC. As a result of Defendants' actions, when awarding funds to TZC through the NYSTA, DOT improperly credited TZC's payments to Naughton Energy as those paid to a DBE supplier. The conduct described in this Paragraph is the "Covered Conduct" for purposes of this Stipulation;

WHEREAS, the Parties have, through this Stipulation, reached a mutually agreeable resolution addressing the claims asserted against Defendants by the Government in the Complaint, for the Covered Conduct;

NOW, THEREFORE, upon the Parties' agreement IT IS HEREBY ORDERED that:

3

## TERMS AND CONDITIONS

1.     The Parties agree that this Court has subject matter jurisdiction over this action and consent to this Court's exercise of personal jurisdiction over each of them.

2.     Defendants admit, acknowledge and accept responsibility for the following conduct (the "Admitted Conduct"):

        a.  Naughton Energy is a fuel distributor that, since December 2006, has been certified by the New York City Metropolitan Transportation Authority as a DBE.

        b.  Pursuant to DOT regulations entitled "Participation by Disadvantaged Business Enterprises in Department of Transportation Financial Assistance Programs" ("DBE Regulations"), DBEs must perform a commercially useful function consistent with the amount of credit claimed by the prime contractor.

        c.  In 2012, Naughton Energy attended a pre-award briefing on the NNYB Project for prospective contractors. During this briefing, Naughton Energy submitted a "Subcontractor/Supplier Questionnaire" (the "TZC DBE Questionnaire") to TZC, in which Naughton Energy stated that they did not intend to use subcontractors to complete any part of Naughton Energy's work for TZC.

        d.  Naughton Energy further represented on the TZC DBE Questionnaire that:

           (1)  Naughton Energy's work for TZC would be completed using only Naughton Energy's own equipment; and

   (2) Naughton Energy would perform the work using its own manpower.

e. In 2013, TZC requested and Defendants agreed to deliver fuel to the NNYB Project.

f. Beginning in August 2013, following a verbal request by TZC, Naughton Energy began delivering diesel fuel to vehicles and heavy equipment on the NNYB Project. Although Naughton Energy and TZC never executed a formal written contract, TZC site personnel continued to request further deliveries of diesel fuel by Naughton Energy, and TZC began paying Naughton Energy millions of dollars for providing fuel services on the NNYB Project.

g. TZC required subcontractors performing work on the NNYB Project to be affiliated with a local chapter of an international union ("Union X").

h. Naughton Energy, which lacked any affiliation with Union X, represented on the TZC DBE Questionnaire that it was affiliated with Union X.

i. Prior to beginning work on the NNYB Project, Defendants contacted a non-DBE company, Subcontractor Y, to assist Naughton Energy with providing diesel fuel services to TZC.

j. Naughton Energy used Subcontractor Y to provide diesel fuel services on the NNYB Project because:

   (1) absent an agreement with Subcontractor Y regarding the use of its truck, Naughton Energy did not have a fuel delivery truck with

5

sufficient capacity to effectively provide diesel fuel services for the NNYB Project; and

    (2)  Naughton Energy lacked the affiliation with Union X necessary to have its own staff to work on the NNYB Project.

k.  To enlist Subcontractor Y's services, Defendants negotiated the following arrangement with Subcontractor Y: John Doe, one of two shareholders of Subcontractor Y and the head of Subcontractor Y's operations, would perform the deliveries using a fuel delivery truck that Subcontractor Y had owned and operated for years (the "Project Truck"). Subcontractor Y would also maintain and provide parking for the Project Truck. In exchange, Naughton Energy would pay Subcontractor Y half its profits for each gallon of diesel fuel sold to TZC.

l.  Defendants did not disclose this arrangement to TZC. Instead, Defendants took the following actions that made it appear that no subcontractor was involved in providing Naughton Energy's services:

    (1)  Defendants negotiated with Subcontractor Y to transfer title of the Project Truck to Naughton Energy for $1; and

    (2)  Defendants placed John Doe on Naughton Energy's payroll.

m.  Although Defendants' actions resulted in Naughton Energy taking ownership of the fuel delivery truck, and John Doe becoming a Naughton Energy employee, these actions had no commercially useful function, as evidenced by the fact that:

      (1)  Subcontractor Y continued to have use of the fuel delivery truck to provide services to Subcontractor Y's customers.

      (2)  Union X's records reflect that Subcontractor Y performed the diesel fuel deliveries on the NNYB Project that were purportedly performed by Naughton Energy.

n.  Defendants failed to disclose to TZC Subcontractor Y's involvement in the work performed on the NNYB project. For example:

      (1)  In August 2013, after Naughton Energy already began using Subcontractor Y to deliver diesel fuel from the fuel terminal to the NNYB Project, Joseph Naughton represented to TZC that "[f]uel deliveries to the Tappan Zee Bridge Project will be supplied by a Naughton Energy owned truck and a driver employed by Naughton Energy . . . [a] Naughton Energy employee directly supervises the operations of the truck and driver personnel."

      (2)  In a DBE commercially useful function survey by TZC, in November 2014 and November 2015, Mariette Naughton did not disclose the involvement of Subcontractor Y.

      (3)  Moreover, in response to an inquiry from TZC's DBE coordinator in May 2014 as to why the truck used to make diesel deliveries to the NNYB Project by Naughton Energy had markings for Subcontractor Y, Joseph Naughton replied that "[w]e purchased the truck from Subcontractor Y." Joseph Naughton did not disclose, however, that the truck had been purchased for $1 and that Naughton

Energy permitted Subcontractor Y to use the truck for its own deliveries.

3.      Defendants shall pay to the Government six hundred and ninety-two thousand dollars ($692,000) (the "Settlement Amount"). Payments pursuant to this paragraph shall be made in accordance with instructions to be provided by the Financial Litigation Unit of the United States Attorney's Office for the Southern District of New York. Defendants agree that they shall not seek indemnification from any source with respect to any portion of the Settlement Amount. The entire Settlement Amount constitutes restitution to the United States. Defendants shall pay the Settlement Amount in six installment payments according to the schedule set forth below:

   a.   Defendants shall make a first installment payment of seventy-five thousand dollars ($75,000) within sixty (60) business days of the Effective Date.

   b.   On or before April 1, 2022, Defendants shall make a payment of one hundred and three thousand dollars ($103,000);

   c.   On or before April 1, 2023, Defendants shall make a payment of one hundred and twelve thousand dollars ($112,000);

   d.   On or before April 1, 2024, Defendants shall make a payment of one hundred and twenty-four thousand dollars ($124,000);

   e.   On or before April 1, 2025, Defendants shall make a payment of one hundred and thirty-six thousand dollars ($136,000);

   f.   On or before April 1, 2026, Defendants shall make a payment of one hundred and forty-two thousand dollars ($142,000);

4.      Defendants shall execute and agree to the entry of a consent judgment in favor of the Government and against Defendants in the amount of three million, two hundred seventy-three

thousand, and six hundred dollars ($3,273,600), a copy of which is attached hereto as Exhibit A (the "Consent Judgment"). The Government may use the Consent Judgment to obtain a security interest in any asset or property of the Defendants, but shall not engage in other collection activity with respect to the Consent Judgment so long as Defendants fully comply with the terms of this Stipulation. Pursuant to this Stipulation, Defendants agree to pay and the Government agrees to accept the Settlement Amount in full satisfaction of the Consent Judgment.

Should Defendants comply fully with the payment schedule set forth in Paragraph 3 above as well as the other terms of this Stipulation, the Consent Judgment shall be deemed to be satisfied in full and, upon Defendants' request, the Government shall file with the Clerk of the Court and deliver to Defendants a Full Satisfaction of Judgment. In the event that Defendants fully pay the Settlement Amount faster than as provided in the payment schedule set forth in Paragraph 3 above, and fully complies with all other terms of the Stipulation, the Consent Judgment shall be deemed to be satisfied in full and, upon Defendants' request, the Government shall file with the Clerk of the Court and deliver to Defendants a Full Satisfaction of Judgment. Should Defendants fail to comply fully with the payment schedule set forth in Paragraph 3 above or any other term of this Stipulation, Defendants shall be in default of this Stipulation, in which case the Government may take any of the actions set forth in Paragraph 9 below.

5.      Defendants agree to cooperate fully and truthfully with the United States' investigation of individuals and entities not released in this Stipulation. Upon reasonable notice, Defendants shall encourage, and agree not to impair, the cooperation of its directors, officers, and employees, and shall use its best efforts to make available, and encourage, the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals. Defendants further agree to furnish to the United States, upon

request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and records in its possession, custody, or control concerning any investigation of the Covered Conduct that it has undertaken, or that has been performed by another on its behalf.

6.     Subject to the exceptions in Paragraph 8 (concerning reserved claims) below and subject to Paragraph 9 (concerning default) and Paragraph 11 (concerning bankruptcy proceedings) below, and Paragraph 13 (concerning disclosure of financial information) below, and conditioned on Defendants' full compliance with the terms of this Stipulation, including full payment of the Settlement Amount to the United States pursuant to Paragraph 3 above, the United States releases Defendants, including Naughton Energy's subsidiaries and corporate predecessors, successors and assigns, from any civil or administrative monetary claim that the United States has for the Covered Conduct under the FCA, the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a, the Program Fraud Civil Remedies Act, 31 U.S.C. § 3801-3812, and the common law theories of fraud, payment by mistake, and unjust enrichment. For avoidance of doubt, this Stipulation does not release any current or former officer, director, employee, or agent of Naughton Energy, other than Mrs. Naughton and Mr. Naughton, from liability of any kind.

7.     Defendants fully and finally release the United States, its agencies, officers, employees, servants, and agents from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that Defendants have asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, employees, servants, or agents related to the Covered Conduct or the United States' investigation, prosecution and settlement thereof.

8.    Notwithstanding the releases given in Paragraph 6 above, or any other term of this Stipulation, the following claims of the Government are specifically reserved and are not released by this Stipulation:

      a.  any liability arising under Title 26, United States Code (Internal Revenue Code);

      b.  any criminal liability;

      c.  except as explicitly stated in this Stipulation, any administrative liability, enforcement right, or suspension or debarment rights of any federal agency;

      d.  any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

      e.  any liability based upon obligations created by this Stipulation; and

      f.  any liability of individuals.

9.    The Settlement Amount represents the amount the United States is willing to accept in compromise of its civil claims arising from the Covered Conduct, due solely to Defendants' financial condition as reflected in the Financial Disclosures referenced in Paragraph 13 below. Defendants shall be in default of this Stipulation if Defendants fail to pay the Settlement Amount as provided in the payment schedule set forth in Paragraph 3 above or if they fail to comply materially with any other term of this Stipulation that applies to it ("Default"). The Government will provide a written Notice of Default to Defendants of any Default in the manner set forth in Paragraph 23 below. Defendants shall then have an opportunity to cure the Default within seven (7) calendar days from the date of receipt of the Notice of Default by making the payment due under the payment schedule. If Defendants fail to cure the Default within seven (7) calendar days of receiving the Notice of Default and in the absence of an agreement with the United States to a

modified payment schedule ("Uncured Default"), the remaining unpaid balance of the Settlement

Amount shall become immediately due and payable. In the event of an Uncured Default, the United

States may initiate a collection action or take any other action with respect to the unpaid portion

of the amount specified in the Consent Judgment attached hereto as Exhibit A. Defendants also

agree that the United States, at its sole discretion, may (i) retain any payments previously made,

rescind this Stipulation, and reinstate the claims asserted against Defendants in the Government

Complaint or bring any civil and/or administrative claim, action, or proceeding against Defendants

for the claims that would otherwise be covered by the releases provided in Paragraph 6 above with

any recovery reduced by the amount of any payments previously made by Defendants to the United

States under this Stipulation; (ii) take any action to enforce this Stipulation in a new action or by

reinstating the Government Action; (iii) offset the remaining unpaid balance from any amounts

due and owing to Defendants and/or affiliated companies by any department, agency, or agent of

the United States at the time of Default or subsequently; and/or (iv) exercise any other right granted

by law, or under the terms of this Stipulation, or recognizable at common law or in equity. The

United States shall be entitled to any other rights granted by law or in equity by reason of Default,

including referral of this matter for private collection. In the event the United States pursues a

collection action, Defendants agree immediately to pay the United States the greater of (i) a ten-

percent (10%) surcharge of the amount collected, as allowed by 28 U.S.C. § 3011(a), or (ii) the

United States' reasonable attorneys' fees and expenses incurred in such an action. In the event that

the United States opts to rescind this Stipulation pursuant to this paragraph, Defendants waive and

agree not to plead, argue, or otherwise raise any defenses of statute of limitations, laches, estoppel

or similar theories, to any civil or administrative claims that (i) are filed by the United States

against Defendants within 120 days of written notification that this Stipulation has been rescinded,

12

and (ii) relate to the Covered Conduct, except to the extent these defenses were available on February 20, 2019. Defendants agree not to contest any offset, recoupment, and /or collection action undertaken by the United States pursuant to this paragraph, either administratively or in any state or federal court, except on the grounds of actual payment to the United States.

10.     Defendants, having truthfully admitted to the Admitted Conduct set forth in Paragraph 2 hereof, agrees it shall not, through its attorneys, agents, officers, or employees, make any public statement, including but not limited to, any statement in a press release, social media forum, or website, that contradicts or is inconsistent with the Admitted Conduct or suggests that the Admitted Conduct is not wrongful (a "Contradictory Statement"). Any Contradictory Statement by Defendants, their attorneys, agents, officers, or employees, shall constitute a violation of this Stipulation, thereby authorizing the Government to pursue any of the remedies set forth in Paragraph 9 hereof, or seek other appropriate relief from the Court. Before pursuing any remedy, the Government shall notify Defendants that it has determined that Defendants have made a Contradictory Statement. Upon receiving notice from the Government, Defendants may cure the violation by repudiating the Contradictory Statement in a press release or other public statement within four business days. If Defendants learn of a potential Contradictory Statement by its attorneys, agents, officers, or employees, Defendants must notify the Government of the statement within 24 hours. The decision as to whether any statement constitutes a Contradictory Statement or will be imputed to Defendants for the purpose of this Stipulation, or whether Defendants adequately repudiated a Contradictory Statement to cure a violation of this Stipulation, shall be within the sole discretion of the Government. Consistent with this provision, Defendants may raise defenses and/or assert affirmative claims or defenses in any proceeding brought by private and/or

public parties, so long as doing so would not contradict or be inconsistent with the Admitted Conduct.

      11.    Defendants waive and shall not assert any defenses Defendants may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Stipulation bars a remedy sought in such criminal prosecution or administrative action.

      12.    In exchange for valuable consideration provided in this Stipulation, Defendants acknowledge the following:

      a.   Defendants have reviewed its financial situation and warrants that it is solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I) and shall remain solvent following payment to the United States of the Settlement Amount.

      b.   In evaluating whether to execute this Agreement, the Parties intend that the mutual promises, covenants, and obligations set forth herein constitute a contemporaneous exchange for new value given to Defendants, within the meaning of 11 U.S.C. § 547(c)(1), and the Parties conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange.

      c.   The mutual promises, covenants, and obligations set forth herein are intended by the Parties to, and do in fact, constitute a reasonably equivalent exchange of value.

d. The Parties do not intend to hinder, delay, or defraud any entity to which Defendants was or became indebted on or after the date of any transfer contemplated in this Stipulation, within the meaning of 11 U.S.C. § 548(a)(1).

e. If Defendants' obligations under this Stipulation are avoided for any reason (including but not limited to through the exercise of a trustee's avoidance powers under the Bankruptcy Code) or if, before the Settlement Amount is paid in full, Defendants or a third party commences a case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors seeking any order for relief of Defendants' debts, or to adjudicate Defendants as bankrupt or insolvent, or seeking appointment of a receiver, trustee, custodian, or other similar official for Defendants or for all or any substantial part of Defendants' assets:

(1) the United States may rescind the releases in this Stipulation and bring any civil and/or administrative claim, action, or proceeding against Defendants for the claims that would otherwise be covered by the releases provided in Paragraph 6 above;

(2) the United States has an undisputed, noncontingent, and liquidated allowed claim against Defendants in the amount of three million, two hundred seventy-three thousand, and six hundred dollars ($3,273,600), less any payments received pursuant to the Stipulation, provided, however, that such payments are not otherwise avoided and recovered from the United States by Defendants, a receiver, trustee, custodian, or other similar official for Defendants; and

      f.   Defendants agree that any civil and/or administrative claim, action, or proceeding brought by the United States under Paragraph 12(e) above is not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) because it would be an exercise of the United States' police and regulatory power. Defendants shall not argue or otherwise contend that the United States' claim, action, or proceeding is subject to an automatic stay and, to the extent necessary, consents to relief from the automatic stay for cause under 11 U.S.C. § 362(d)(1). Defendants waive and shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claim, action, or proceeding brought by the United States within 120 days of written notification to Defendants that the releases have been rescinded pursuant to this paragraph, except to the extent such defenses were available on February 20, 2019.

    13.   Defendants have provided sworn financial disclosures and supporting documents ("Financial Disclosures") to the United States and the United States has relied on the accuracy and completeness of those Financial Disclosures in reaching this Stipulation. Defendants warrant that the Financial Disclosures are complete, accurate, and current. If the United States learns of asset(s) in which Defendants had an interest at the time of the execution of this Stipulation that were not disclosed in the Financial Disclosures, or if the United States learns of any false statement or misrepresentation by Defendants on, or in connection with, the Financial Disclosures, and if such nondisclosure, false statement, or misrepresentation changes the estimated net worth of Defendants as reflected in the Financial Disclosures by sixty-nine thousand, two hundred dollars ($69,200) or more, the United States may at its option: (a) rescind this Stipulation and reinstate its lawsuit based

on the Covered Conduct, or (b) let the Stipulation stand and collect the full Settlement Amount

plus one hundred percent (100%) of the net value of Defendants' previously undisclosed assets.

Defendants agree not to contest any collection action undertaken by the United States pursuant to

this provision, and agrees that it will immediately pay the United States the greater of (i) a ten-

percent (10%) surcharge of the amount collected in the collection action, as allowed by 28 U.S.C.

§ 3011(a), or (ii) the United States' reasonable attorneys' fees and expenses incurred in such an

action. In the event that the United States pursuant to this paragraph rescinds this Stipulation,

Defendants waive and agrees not to plead, argue, or otherwise raise any defenses under the theories

of statute of limitations, laches, estoppel, or similar theories, to any civil or administrative claims

that (a) are filed by the United States within 120 calendar days of written notification to Defendant

that this Stipulation has been rescinded, and (b) relate to the Covered Conduct, except to the extent

these defenses were available on February 20, 2019.

14.     Defendants agree to the following:

a.     Unallowable Costs Defined: All costs (as defined in the Federal Acquisition

Regulation, 48 C.F.R. § 31.205-47) incurred by or on behalf of Defendant and

its present or former officers, directors, employees, shareholders, and agents in

connection with:

(1)     the matters covered by this Stipulation;

(2)     the United States' audit(s) and civil and any criminal investigation(s) of the

matters covered by this Stipulation;

(3)     Defendants' investigation, defense, and corrective actions undertaken in

response to the United States' audit(s) and civil and any criminal

investigation(s) in connection with the matters covered by this Stipulation (including attorney's fees);

(4)   the negotiation and performance of this Stipulation;

(5)   the payment Defendant makes to the United States pursuant to this Agreement and any payments that Defendant may make to Relator, including costs and attorneys' fees, are unallowable costs for government contracting purposes (hereinafter referred to as Unallowable Costs).

b.  Future Treatment of Unallowable Costs: Unallowable Costs will be separately determined and accounted for by Defendants, and Defendants shall not charge such Unallowable Costs directly or indirectly to any contract with the United States.

c.  Treatment of Unallowable Costs Previously Submitted for Payment: Within 90 days of the Effective Date of this Stipulation, Defendants shall identify and repay by adjustment to future claims for payment or otherwise any Unallowable Costs included in payments previously sought by Defendants or any of Naughton Energy's subsidiaries or affiliates from the United States. Defendants agree that the United States, at a minimum, shall be entitled to recoup from Defendants any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously submitted requests for payment. The United States, including the Department of Justice and/or the affected agencies, reserves its rights to audit, examine, or re-examine Defendants' books and records and to disagree with any calculations submitted by Defendants or any of its subsidiaries or affiliates regarding any Unallowable

Costs included in payments previously sought by Defendants, or the effect of any such Unallowable Costs on the amount of such payments.

15.    This Stipulation is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity except as otherwise provided herein.

16.    Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Stipulation;

17.    Any failure by the Government to insist upon the full or material performance of any of the provisions of this Stipulation shall not be deemed a waiver of any of the provisions hereof, and the Government, notwithstanding that failure, shall have the right thereafter to insist upon the full or material performance of any and all of the provisions of this Stipulation.

18.    This Stipulation is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Stipulation is the United States District Court for the Southern District of New York. For purposes of construing this Stipulation, this Stipulation shall be deemed to have been drafted by all Parties to this Stipulation and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

19.    This Stipulation constitutes the complete agreement between the Parties with respect to the subject matter hereof. This Stipulation may not be amended except by written consent of the Parties. Forbearance by the United States from pursuing any remedy or relief available to it under this Agreement shall not constitute a waiver of rights under this Stipulation.

20.    The undersigned counsel and other signatories represent and warrant that they are fully authorized to execute this Stipulation on behalf of the persons and the entities indicated below.

21.    This Stipulation is binding on Defendants' successors, transferees, heirs, and assigns.

22.    This Stipulation may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Stipulation. E-mails that attach signatures in PDF form or facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Stipulation.

23.    Any notice pursuant to this Stipulation shall be in writing and shall, unless expressly provided otherwise herein, be delivered by hand, express courier, or e-mail transmission followed by postage-prepaid mail, and shall be addressed as follows:

TO THE UNITED STATES:

Jessica Jean Hu
Assistant United States Attorney
United States Attorney's Office
Southern District of New York
86 Chambers Street, Third Floor
New York, New York 10007
Email: jessica.hu@usdo.gov

TO DEFENDANT:

Michael J. Hogan, Esq.
Moritt Hock & Hamroff LLP
400 Garden City Plaza
Garden City, New York 11530
Email: mhogan@moritthock.com

24.    The effective date of this Stipulation is the date upon which the Stipulation is approved by the Court (the "Effective Date").

Agreed to by:

**THE UNITED STATES OF AMERICA**

Dated: New York, New York
        May 2a 2021

AUDREY STRAUSS
United States Attorney for the
Southern District of New York

By:

Jessica Jean Hu
Assistant United States Attorney
86 Chambers Street, Third Floor
New York, New York 10007
Tel.:    (212) 637- 2726
Fax:    (212) 637-2717

*Attorney for the United States of America*

**DEFENDANTS**

Dated:  Garden City, New York
        May 13 2021

                                        Counsel for Defendants

                                        By:  _____
                                             MICHAEL J. HOGAN

                                             MORITT HOCK & HAMROFF LLP
                                             400 Garden City Plaza
                                             Garden City, New York 11530
                                             *Attorney for Defendants*

Dated:  Pocono Pines, Pennsylvania
        May 12 2021

                                        Individual Defendants

                                        By:  _____
                                             MARIETTE NAUGHTON


                                        By:  _____
                                             JOSEPH NAUGHTON

22

This matter is hereby dismissed.  The Clerk of Court is respectfully directed to close this case.

SO ORDERED:

HONORABLE
UNITED STATES DISTRICT JUDGE
 Date: June 1, 2021

Dated: May ___, 2021